IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DARREN L. DITTRICH, | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Cause No. 3:12-CV-_____-_ |
| | § | |
| DESPAIR, INC., | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF DARREN DITTRICH'S ORIGINAL COMPLAINT**

TO THE HONORABLE COURT:

### I.  Introduction

1.      Plaintiff Darren Dittrich asks this Court to (1) declare that his registration and use of the domain name <despair.net> is not unlawful under the Anticybersquatting Consumer Protection Act, 15 U.S.C. §§ 1125(d), and (2) prevent the transfer of the domain name <despair.net> from Dittrich to Despair, Inc.

### II.  Parties

2.      Plaintiff Darren L. Dittrich is an individual who resides in Dallas County.  On or about April 3, 2000, Dittrich registered the domain name <despair.net>.

3.      Defendant Despair, Inc. is a corporation organized under the laws of Texas.  It has a business office and address at 800 Interchange Boulevard, Suite 102, Austin, Texas 78721, 512.789.8905, 512.389.5339 (fax), legal@despair.com; lkersten@despair.com; jef@despair.com.  Lawrence Kersten, is one of the founders of  Despair, Inc.  Despair, Inc. may

be served with service of process on its registered agent Jeffrey D. Sewell, 800 Interchange

Boulevard, Suite 102, Austin, Texas 78721.

### III.  Jurisdiction and Venue

4.      This Court has federal-question jurisdiction, *see* 28 U.S.C. § 1331, because this

case involves questions under the Anticybersquatting Consumer Protection Act, 15 U.S.C.

§ 1125(d), and the Lanham Act, 15 U.S.C. § 1114.  Dittrich also seeks a declaratory judgment

under the Declaratory Judgments Act, 28 U.S.C. §§ 2201–2202.

5.      This Court has personal jurisdiction over Despair, Inc. because it has a street

address and does business in Texas.

6.      Venue is proper in this district, because a substantial part of the events and acts

giving rise to Dittrich's claims occurred here.  *See* 28 U.S.C. § 1391(b)(2).  Also, Despair, Inc.

submitted to litigation where Dittrich is located, that is, Dallas County, in its complaint in

Accordance with the Uniform Domain Name Dispute Resolution Policy (submitted Mar. 20,

2012).

### IV.  Facts

7.      On or about April 3, 2000, Dittrich registered the domain name <despair.net>

with the domain registrar, Network Solutions.  Some time later, Enom, Inc. succeeded Network

Solutions as the domain registrar.

8.      Dittrich has maintained the registration of the domain <despair.net> (including

annual renewal fees) continuously since April 3, 2000.  Dittrich chose the domain name

<despair.net> because it is a generic term that could be used in a wide variety of business

pursuits.  Dittrich is in the business of building internet properties and reserves the right to use

<despair.net> on a project of his choosing, and at a time of his choosing.

9.      Upon information and belief, Despair, Inc. operates a business and website with the domain name <despair.com> where it sells novelty or "demotivational" calendars, posters, postcards, note cards, framed pictures, clothing, mugs, laptop skins, mouse pads, and glasses.

10.      Upon information and belief, the United States Patent & Trademark Office (USPTO) granted Despair, Inc. the Despair trademark (USPTO Registration No. 2398404) on, or no sooner than, October 24, 2000.

11.      Upon information and belief, the USPTO granted Despair, Inc. the Despair service mark (USPTO Registration No. 2502720) on, or no sooner than, October 30, 2001.

12.      Despair, Inc. received its ostensible Despair trademark and service mark with full notice that another person had registered the domain name <despair.net>.  Despair, Inc. also built its business and conducted its commercial activities with this knowledge.  Dittrich has never used <despair.net> to divert business, customers, or revenue from Despair, Inc.

13.      The Internet Corporation for Assigned Names and Numbers ("ICANN") is a private-sector, not-for-profit corporation created to assume responsibility for, among other things, IP address space allocation and domain-name-system management.  ICANN promulgated the Uniform Domain Name Dispute Resolution Policy ("UDRP"), a uniform process for the administrative resolution of disputes regarding registration of domain names.

14.      Enom's registration agreement requires domain registrants to agree to resolve domain disputes brought by third parties in accordance with the UDRP.

15.      The UDRP requires that a registrant submit to a mandatory administrative proceeding in the event a third party asserts that (i) the domain at issue is identical or confusingly similar to a trademark in which the complaining third party has rights; (ii) the registrant has no

rights or legitimate interests in the domain; and (iii) the domain has been registered and is being used in bad faith.

16.     On or about March 20, 2012, Despair, Inc. submitted a Complaint to the National Arbitration Forum ("NAF") pursuant to the UDRP, Claim No. FA1203001435300.  Despair, Inc. challenged the registration of the domain name <despair.net> and sought the transfer of the domain name from Dittrich to Despair, Inc.

17.     Before March 2012, no one had filed a domain-name dispute against <despair.net>.  Despair, Inc.'s was the first-filed complaint concerning the domain name in the more than twelve years that Dittrich held the domain name.  Dittrich didn't receive actual notice of Despair, Inc.'s complaint until after the arbitration decision.  Dittrich, thus, didn't file a response.

18.     On April 24, 2012, a single-member NAF Panel issued its decision in the domain name dispute (the "UDRP Decision").  The Panel found that Despair, Inc. had established elements required under the ICANN policy, and ordered the transfer of domain name <despair.net> from Dittrich to Despair, Inc.

19.     The domain name <despair.net> is subject to imminent transfer as a result of the UDRP Decision.

20.     This Court is in no way bound by the NAF's April 24, 2012 ruling, nor is the UDRP Decision due any deference.  This Court should perform a *de novo* review of the relevant issues.

21.     The UDRP Decision was improper, and Dittrich's ownership and use of the Domain name are not in violation of the ACPA.

22.     Dittrich has neither registered nor used the domain name in bad faith.

23.     Dittrich does not seek to divert Despair, Inc.'s customers nor does Dittrich use the domain name with any intent to tarnish or disparage Despair, Inc.'s mark or Despair, Inc. itself.

24.     Dittrich has not offered to sell the domain name to Despair, Inc. or to any other party for financial gain.

25.     Dittrich registered the domain name before Despair, Inc. had registered the trademark "DESPAIR" in any jurisdiction.

26.     Despair, Inc. has overreached its trademark and service-mark rights and wrongfully asserted a claim to the domain name.

27.     Dittrich's registration and use of domain name are not unlawful under the ACPA, and Dittrich therefore has every right to possess and maintain this valuable asset.

28.     Dittrich is entitled to injunctive relief preventing the transfer of the domain name from Dittrich to Despair, Inc.

29.     Contemporaneous with the filing of this Complaint with the Court, Dittrich has provided notice of the same upon Despair, Inc., the National Arbitration Forum, and the sponsoring registrar for the domain name, Enom.

### V.  Claim 1:  Declaratory Judgment
### Anticybersquatting Consumer Protection Act

30.     Dittrich re-alleges the facts in paragraphs 7–29 here.

31.     A dispute exists between Dittrich and Despair, Inc. concerning Dittrich's right to maintain his registration and use of the domain name <despair.net>.  The domain name is subject to imminent transfer to Despair, Inc.  Therefore, a justiciable controversy exists between Dittrich and Despair, Inc.

32.     At the time Dittrich registered the domain name, Despair, Inc.'s ostensible

Despair trademark and service mark were neither "distinctive" nor "famous" as

15 U.S.C. § 1125(d)(1)(A)(ii) requires.

33.     Dittrich has neither registered nor used the domain name in bad faith, and he's

never had a bad-faith intent to profit from Despair, Inc.'s trademark or service mark within

15 U.S.C. § 1125(d)(1)(A)(i)'s meaning.

34.     Dittrich had reasonable grounds to believe that his registration and use of the

domain name was a fair use or was otherwise lawful within 15 U.S.C. § 1125(d)(1)(B)(ii)'s

meaning.

35.     Dittrich's registration and use of <despair.net> is not unlawful under the

Anticyberquatting Consumer Protection Act and does not violate Despair, Inc.'s rights, and the

UDRP Decision is contrary to law and the facts.

36.     Dittrich will be irreparably harmed if the domain name is transferred to Despair,

Inc.

## VI.  Claim 2:  Declaratory Judgment
## Lanham Act

37.     Dittrich re-alleges the facts in paragraphs 7–36 here.

38.     A dispute exists between Dittrich and Despair, Inc. concerning Dittrich's right to

maintain his registration and use of the domain name <despair.net>.  The domain name is subject

to imminent transfer to Despair, Inc.  Therefore, a justiciable controversy exists between Dittrich

and Despair, Inc.

39.     Dittrich's registration and use of the domain name <despair.net> are not likely to

cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association

of Dittrich with Despair, Inc., or as to the origin, sponsorship, or approval of Dittrich's goods,

services, or commercial activities by Despair, Inc.

40.     Dittrich's registration and use of the domain name do not misrepresent the nature,

characteristics, qualities, or geographic origin of Dittrich's or Despair, Inc.'s good, services, or

commercial activities.

41.     Dittrich's registration and use of the domain name do not violate Despair, Inc.'s

rights under the Lanham Act.

42.     Dittrich will be irreparably harmed if the domain name is transferred to Despair,

Inc.

## VII.  Claim 3:  Declaratory Judgment
## Unenforceability Due to Laches and Waiver

43.     Dittrich re-alleges the facts in paragraphs 7–42 here.

44.     A dispute exists between Dittrich and Despair, Inc. concerning Dittrich's right to

maintain his registration and use of the domain name <despair.net>.  The domain name is subject

to imminent transfer to Despair, Inc.  Therefore, a justiciable controversy exists between Dittrich

and Despair, Inc.

45.     Dittrich has maintained the registration of the domain <despair.net> (including

annual renewal fees) continuously since April 3, 2000, or over 12 years.

46.     Despair, Inc. was on record notice of the fact that another person had registered

the domain name since April 3, 2000, at the times when it received its trademark and service-

mark registrations with the USPTO.  Despair, Inc. didn't start a proceeding to transfer the

domain name until March 20, 2012.  Although someone purporting to be from Despair, Inc.

contacted Dittrich in or about 2008 and asked about buying the domain name, Dittrich rejected

his offer, as was within his rights.

47. Despair, Inc.'s delay is unreasonable and inexcusable.

48. Despair, Inc. comes far too late and, under the doctrine of laches, has slept on its ostensible rights.

49. Moreover, Despair, Inc.'s receipt of its marks with at least record knowledge that another person had registered the domain name <despair.net>, its allegedly building a business and website using the name <despair.com> with this knowledge, and its long delay in starting a suit to transfer the domain name, amounts to a waiver of its alleged rights to the domain name <despair.net>.

50. Dittrich has held the registration and used the domain name <despair.net> for over 12 years without a complaint by Despair, Inc. Dittrich will be irreparably harmed if the domain name is transferred to Despair, Inc.

## VIII. Claim 4: Cancellation of Trademark and Service Mark

51. Dittrich re-alleges the facts in paragraphs 7–50 here.

52. Despair, Inc.'s ostensible Despair trademark (USPTO Registration No. 2398404) and service mark (USPTO Registration No. 2502720) are essentially a mere description of the company's novelty or "demotivational" products and commercial activity. The relevant purchasing public understands "despair" to be a generic term describing the goods Despair, Inc. provides with its alleged marks.

53. Despair, Inc.'s U.S. trademark and service-mark registrations are invalid and unenforceable, and the trademark's and service mark's primary significance to the consuming public is generic with respect to the goods. Thus, the Court should cancel the registrations.

## IX. Prayer for Relief

54. Darren Dittrich thus asks the Court to—

      a.      enter a declaratory judgment that Dittrich's registration and use of the domain name <despair.net> do not violate the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d);

      b.      enter a declaratory judgment that Dittrich is entitled to the registration, ownership, and use of the domain name <despair.net> under 15 U.S.C. §1114(2)(D)(iv)–(v) and need not transfer the domain name to Despair, Inc.;

      c.      enter a declaratory judgment that Despair, Inc. comes too late to contest Dittrich's ownership, registration, and use of the domain name <despair.net> under the doctrine of laches;

      d.      enter a declaratory judgment that Despair, Inc. waived any right to dispute Dittrich's ownership, registration, and use of the domain name <despair.net>;

      e.      enter an injunction cancelling U.S. Trademark Registration No. 2398404 and U.S. Service Mark Registration No. 2502720;

      f.      award Dittrich attorney's fees and costs incurred in pursing this case; and

      g.      award Dittrich all other relief that the Court deems just and proper.

Dated:  May 3, 2012

Respectfully submitted,

**PEZZULLI BARNES, L.L.P.**

/s/ Michael F. Pezzulli
Michael F. Pezzulli
State Bar No. 15881900
Christopher L. Barnes
State Bar No. 00792175
17300 Preston Road, Suite 220
Dallas, Texas 75252
(972) 713-1300
(972) 713-1333 fax

**ATTORNEYS FOR PLAINTIFF**